# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CYNTHIA ORTEGA,

       Plaintiff,

v.                                            CV 15-688 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Cynthia Ortega applied for supplemental security income ("SSI") on July 15, 2008, based on back injuries, mental problems, and knee problems. (Administrative Record "AR" 42, 118.) An Administrative Law Judge ("ALJ") denied Ortega's application on June 24, 2010. (AR 9-25.) Ortega filed for review by the Appeals Council. While her 2008 application was pending before the Appeals Council, Ortega filed a subsequent application on July 13, 2010. (AR 349.) The Appeals Council denied her 2008 application on September 14, 2012 (AR 1-3), and Ortega then filed a motion in the District of New Mexico. The 2010 application was fully granted on March 26, 2013. (AR 349.) Her original motion to remand was granted by Judge Vidmar, pursuant to agreement of the parties, on August 6, 2013. (AR 342.) On remand, the Social Security Administration ("SSA") resolved the issue of whether Ortega was disabled between July 15, 2008—her original application date—and July 13, 2010—the application date of her subsequent, fully-granted, application. (AR 349.) After Ortega's remanded application for the period between 2008 and 2010 was denied at all administrative levels, she filed the instant motion to remand.

(Doc. 18.) The Commissioner of the SSA filed a response (Doc. 22) and Ortega filed a reply (Doc. 24). For the reasons explained below, I grant Ortega's motion to remand and, under the circumstances explained herein, remand this case for an immediate award of benefits.

## STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the ALJ's decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the

claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### FACTUAL BACKGROUND

Ortega is a fifty-two-year-old woman with a GED and additional training in computers and as a Certified Nurse's Assistant. (AR 30, 42, 233.) Ortega previously worked in housekeeping at various hotels, motels, and condominiums, and as a home caregiver. (AR 119, 233.) Ortega claims disability for the period from July 1, 2008, through July 13, 2010, based on back injuries, mental problems, and knee problems. (AR 118.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Ortega primarily received treatment at the Questa branch of Presbyterian Medical Services ("PMS"). Many of the Adult Progress Notes from that facility are signed by a physician, but the signatures are indecipherable. (*See, e.g.*, AR 203, 206.) Additionally, Ortega has a history of missing appointments. (*See, e.g.*, AR 204, 205, 209, 224, 226.)

The first relevant record comes from a January 16, 2007, visit to Questa PMS. (AR 229.) Ortega complained of low back pain that started the previous day and spread into her chest. She described the pain as stabbing and throbbing, and reported that she had been vomiting through the night. Ortega was sent to the emergency room. The record of that visit is not in the file.

The next relevant document is a Behavioral Health Assessment filled out by Sherley Gonzales, Ed.D., on February 11, 2008. (AR 211.) Ortega reported to Dr. Gonzales for court-ordered therapy after an altercation with her daughter. Ortega complained of chronic pain, general lethargy, and a sad mood. (*Id.*) Dr. Gonzales assessed Ortega with an adjustment disorder with depression and anxiety, chronic pain, and GAF of 55.[1] (AR 220-221.) Dr. Gonzales recommended that Ortega attend therapy once per week for approximately one year. (AR 221.)

Ortega returned to Questa PMS on February 28, 2008, complaining of back pain, anxiety, and poor sleep quality. (AR 210.) She reported her pain as 9 out of 10. The physician, whose signature is not legible, assessed Ortega with chronic back pain, insomnia, and anxiety. (*Id.*) On

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Ortega's mental health providers used this scoring method.

4

April 22, 2008, a provider at Questa PMS refilled Ortega's prescription for trazodone, used to treat depression and anxiety. (AR 208.)

Dr. Gonzales filled out a Behavioral Health Discharge Summary for Ortega on June 25, 2008. (AR 207.) Ortega's condition was essentially unchanged, and she stopped attending therapy because she believed she had fulfilled the court's requirements. (*Id.*)

Ortega applied for SSI benefits and noted that she had applied for unemployment benefits as well. (AR 104.) During a telephone call with Ortega on July 23, 2008, M. Padilla—an employee of the State Agency—noted that Ortega "seemed to have trouble concentrating and remaining focused" and stated that she was very soft-spoken. (AR 115-116.)

The State Agency sent Ortega for a psychological consultative examination with Robert Krueger, Ph.D., on August 26, 2008. (AR 162.) Dr. Krueger did not review any medical records or other information about Ortega. He conducted a clinical interview with psychosocial history, a mental status examination, a revised wide range achievement test, and a digit span test. (AR 163.) Ortega reported chronic low back pain due to back problems from years of hard labor; a knee injury after falling on ice in January 2008; pain, swilling, and limited movement in her right knee; and chronic pain in her right shoulder area. (AR 163-64.) At the time of the evaluation, Ortega reported that she was receiving unemployment benefits. (AR 165.) Dr. Krueger noted that Ortega walked slowly, presented as moderately depressed and dysphoric, became tearful at various points during the interview, and had a sad facial expression and appeared to have low energy. (*Id.*) Dr. Krueger found that Ortega showed evidence of having a major depressive disorder, but did not appear to meet diagnostic criteria for having a specific anxiety disorder. (*Id.*)

Ortega exhibited clear speech but limited verbal skills. (*Id.*) She had serious problems with word recognitions skills and scored in the first or second percentile for reading, spelling, and math. Dr. Krueger found that she was functioning at a low level with these basic skills, and that the evidence strongly suggested that Ortega has a learning disability. (*Id.*) Additionally, Ortega had moderate impairment in terms of her concentration and immediate recall memory skills. (AR 166.)

Dr. Krueger assessed Ortega with major depressive disorder, single episode, of moderate severity; learning disorder NOS; parent-child relational problems; and a GAF of 55. (*Id.*) He stated that the "results of the current psychological evaluation indicate that Ms. Ortega does have significant functional impairment now" and can be expected to have: "at least moderate impairment with being aware of and reacting appropriately to dangers in work environments;" "moderate impairment with understanding, remembering, and following simple work instructions"; "moderate impairment in relationships with coworkers, supervisors and the general public"; "moderate to severe impairment with maintaining pace and persistence in most work environments"; "moderate to severe impairment with adjusting to changes"; "severe impairment with complex or detailed instructions"; and "severe impairment with traveling to distant places alone." (AR 166-67.) Dr. Krueger further opined that these appeared to be relatively long-term problems that would persist for more than one year. (AR 167.)

On September 4, 2008, non-examining State Agency consultant Paul Cherry, Ph.D., completed a Psychiatric Review Technique ("PRT") form and a Mental Residual Functional Capacity Assessment form on Ortega, based on her medical records. (AR 170-87.) Dr. Cherry's PRT indicates that Ortega suffers from major depressive disorder, single episode, moderate, that does not precisely satisfy the diagnostic criteria (AR 173), and from an unspecified learning

disorder that does not precisely satisfy diagnostic criteria (AR 174). Dr. Cherry found that Ortega has mild restriction on her activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. (AR 180.) Dr. Cherry's Mental RFC Assessment indicated that Ortega has marked limitations in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (AR 184-85.) Additionally, Ortega has moderate limitations in her ability to maintain attention and concentration for extended periods, ability to work in coordination with/proximity to others without being distracted by them, ability to complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, ability to respond appropriately to changes in the work setting, ability to travel in unfamiliar places or use public transportation, and ability to set realistic goals or make plans independently of others. (AR 184-85.) Dr. Cherry found no additional significant limitations. Finally, he wrote that Ortega "retains the ability to understand, remember and carry out simple instructions, interact routinely with others in the workplace, and concentrate and persist sufficiently to complete routine, repetitive tasks." (AR 186.) While Ortega "is moderately limited in her function, she is capable of meeting the mental demands of unskilled work." (*Id.*)

The State Agency sent Ortega for a physical consultative examination with Marshall Reich, M.D., on October 8, 2008. (AR 188-91.) Ortega alleged back injuries, mental problems, and knee problems. (AR 189.) Dr. Reich noted that she walked without a limp, but walked

carefully. Ortega could bend and walk on her heels and toes, but would not hop on her right leg because her knee is painful. She complained that she often suffers from headaches, and that they are somewhat relieved by Tylenol. Dr. Reich noticed a moderate amount of fluid in her right knee, with laxity of the medial collateral ligament and tenderness in that area. (AR 190.) Dr. Reich diagnosed Ortega with depression, weakness of the medial collateral ligament with right knee effusion, and untreated hypertension. (*Id.*)

Non-examining State Agency consultant L. Holly reviewed Ortega's records on October 24, 2008, and crafted a physical RFC. (AR 192-99.) The physical RFC found that Ortega could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for six hours during an eight-hour workday, sit for six hours during an eight-hour workday, push or pull without additional limitations, and that these limitations derived from Ortega's medial collateral ligament laxity and effusion of her right knee. (AR 193.) She had no postural, manipulative, visual, communicative, or environmental limitations. (AR 194-96.) Holly did not review any medical source statements, but stated that Ortega's "statements of severe physical symptoms appear[] to be exaggerated and inconsistent with the medical record . . . ." (AR 197-98).

Stephan Whaley, a non-examining State Agency consultant, affirmed the physical RFC as written on April 6, 2009. (AR 231.)

The State Agency referred Ortega to Michael Cummings, Ph.D., for a mental status examination on June 8, 2009. (AR 233.) Dr. Cummings interviewed Ortega, conducted a mental status examination, and reviewed Dr. Krueger's report. (AR 233.) Dr. Cummings observed that Ortega exhibited low motor activity and a dysphoric affect, that she frequently cried during the evaluation, and described her mood as "sad." (AR 234.) He noted that Ortega did not have consistent medical care for her back and knee problems, and that her reports did not meet the

8

criteria for mental illness. (AR 235.) Dr. Cummings found that Ortega "is not limited in her ability to understand and remember very short and simple instructions[, . . .] is moderately limited in her ability to work without supervision [and . . . ] to interact with the public, coworkers, and supervisors." (AR 236.) Additionally, Ortega is moderately limited in her "ability to adapt to changes in the workplace[ and to] be aware of normal hazards and react appropriately." (*Id.*) Dr. Cummings did not evaluate Ortega's ability to understand and remember detailed or complex instructions or her ability to carry out instructions or attend and concentrate.[2] (*Id.*) Dr. Cummings diagnosed Ortega with an unspecified depressive disorder affecting chronic pain and headaches, an unspecified learning disorder, rule out an unspecified personality disorder, chronic back and knee pain, a current GAF of 55, and the highest GAF of the past year also as 55. (*Id.*)

Ortega's treating physician, Jaye Swoboda, M.D., signed a note on December 21, 2009, stating that Ortega had been seen in the clinic that day and her "[d]isability status [was] unchanged." (AR 243.) On May 3, 2010, Dr. Swoboda filled out six forms on behalf of Ortega: Medical Assessment of Ability To Do Work-Related Activities (Physical) (AR 266), Medical Assessment of Ability To Do Work-Related Activities (Non-Physical) (AR 267), 12.04 Affective Disorders (AR 268), 12.06 Anxiety-Related Disorders (AR 269), Assessment of Adaptation to Temperament Characteristics Required by Jobs (AR 270), and Medical Assessment of Ability To Do Work-Related Activities (Mental) (AR 271-72). On these forms, Dr. Swoboda opined that Ortega:

- Cannot maintain physical efforts for long periods due to pain and fatigue (AR 266);
- Can frequently lift/carry less than ten pounds because of knee pain, though x-ray findings were pending (*id.*);

---

[2] Technically, Dr. Cummings stated that these items could not be rated due to possible malingering (AR 236), but the ALJ disregarded the malingering remark (AR 304).

9

- Can stand/walk for less than two hours during an eight-hour day and can sit for less than four hours during an eight-hour day, based on Ortega's report (*id.*);
- Is limited in her ability to push/pull in her lower extremities, based on x-rays and her report (*id.*);
- Can do repetitive handling and fingering motions, but is limited in reaching in all directions, based on an observation of Ortega's discomfort when she moves (*id.*);
- Can never kneel or crawl, but can occasionally stoop or crouch, based on Ortega's report (*id.*);
- Suffers from pain that produces impairments, but the pain is not severe (AR 267);
- Suffers from sleep disturbances and fatigue, and must rest or lie down at regular intervals due to her pain or fatigue (*id.*);
- Has an unspecified depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilty or worthlessness, and difficulty concentrating or thinking (AR 268);
- Has a medically documented history of chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement (*id.*);
- Has medically documented findings of recurrent (rare) severe panic attacks manifested by a sudden and unpredictable onset of intense apprehension, fear, terror, and sense of impending doom that occur, on the average, at least one per week; has recurrent obsessions or compulsions which are a source of marked distress; and has recurrent and intrusive recollections of a traumatic experience which are a source of marked distress (AR 269);
- Experiences marked restrictions in activities of daily living, marked difficulties maintaining social functioning, and marked difficulties maintaining concentration, persistence, or pace (AR 268-69);
- Does not need to avoid performing repetitive or short-cycle work, working alone or apart in physical isolation from others, dealing with people, or working under specific instructions (AR 270);
- Should avoid performing a variety of duties, performing effectively under stress; making judgments and decisions; attaining precise set limits, tolerances, and standards; influencing people in their opinions, attitudes, and judgments; and directing, controlling, or planning the activities of others (*id.*);
- Experiences slight limitations in her ability to carry out very short and simple instructions, ask simple questions or request assistance, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (AR 270-72);
- Experiences moderate limitations in her ability to:
  - maintain attention and concentration for extended periods (i.e., 2-hour segments);
  - perform activities within a schedule;
  - maintain regular attendance and be punctual within customary tolerance;
  - sustain an ordinary routine without special supervision;

- o work in coordination with or proximity to others without being distracted by them;
- o make simple work-related decisions;
- o remember locations and work-like procedures;
- o understand and remember very short and simple instructions;
- o carry out detailed instructions;
- o maintain attention and concentration for extended periods of time;
- o perform activities within a schedule;
- o interact appropriately with the general public;
- o accept instructions and respond appropriately to criticism from supervisors; and
- o get along with coworkers or peers without distracting them or exhibiting behavioral extremes (AR 267, 271-72); and
- Experiences marked limitations in her ability to:
  - o maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently;
  - o complete a normal workday and workweek without interruptions from pain or fatigue, or fatigue based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods;
  - o understand and remember detailed instructions; and
  - o travel in unfamiliar places or use public transportation (AR 267, 271-72).

Dr. Swoboda also wrote that he "suggest[s Ortega get] formal psychometric evaluation of cognitive deficit." (AR 272.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

The Appeals Council remanded the period from 2008-2010 to the ALJ on September 18, 2013. (AR 351.) The Order directs the ALJ to consider the opinions and explain the weight given to opinion evidence, evaluate Ortega's mental impairments, give further consideration to Ortega's RFC, obtain evidence from a vocational expert to clarify the effect of the assessed limitations, and to render a decision at step five of the sequential evaluation process because Ortega has no prior relevant work. (AR 350-51.)

The ALJ issued her decision on April 8, 2015. (AR 290.) While the ALJ recognized that Ortega argued that the only issue on remand was the determination of an onset date before July 13, 2010, the ALJ disagreed. (AR 294.) She concluded that the Appeals Council's instructions were to "adjudicate the period prior to [the 2010 application] decision." (*Id.*)

11

At step one, the ALJ found that Ortega had not engaged in substantial gainful activity since July 15, 2008. (AR 296). At step two, she found that Ortega had, during the relevant period, the severe impairments of right knee weakness, a learning disorder, and depression; the non-severe impairment of hypertension; and no medical signs or laboratory findings to substantiate the existence of back problems, a shoulder injury, schizophrenia, bipolar disorder, anxiety, or a compulsive disorder. (*Id.*) At step three, the ALJ specifically considered Listings 1.02 and 12.04, and found that Ortega did not have an impairment or combination of impairments that met one of the Listings. (AR 297.) The ALJ further found that Ortega experienced no episodes of decompensation, mild restriction in her activities of daily living, moderate difficulty with social functioning, and moderate difficulty with regard to concentration, persistence, or pace. (*Id.*)

At step four, the ALJ found that Ortega has "the residual functional capacity to perform light work . . . except she is limited to simple routine tasks with level one reasoning; occasional and superficial interactions with co-workers; and no assembly type production pace." (AR 298.) In support of her RFC, the ALJ found that Ortega is not entirely credible, in part because she rarely sought treatment during the relevant period and did not keep appointments. (*Id.*) Further, the ALJ noted Dr. Swoboda's existing treatment records show no documentation of examination and no notation that she was in pain. (AR 300.) She then summarized the opinion of Dr. Reich, and gave "his observations great weight as he is a doctor who is trained to perform examinations and he has no personal stake in the outcome of this decision." (*Id.*) The ALJ also summarized the opinion of L. Holly and the affirmation by Stephan Whaley, noting that she gave "their opinion great weight as they are experienced at reviewing medical records and assigning physical residual functional capacities. Further, their opinion is consistent with the consultative

12

examination and with the claimant's infrequent and conservative treatment with missed appointments and very rare complaints of pain." (*Id.*)

The ALJ then turned to the forms filled out by Dr. Swoboda in May 2010. She summarized Dr. Swoboda's opinion, and stated that she gave

> his opinion little weight as he only personally treated the claimant two times prior to July 12, 2010. Further, . . . his treatment notes did not document physical examinations, and the claimant did not complain about physical pain during these visits. Although he diagnosed her with degenerative joint disease, he did not yet have medical imaging to confirm this diagnosis and did not describe any physical examination of her knee. Further, he noted that his recommended limitations were also based on the claimant's reports. As these limitations are a reflection of the claimant's subjective reported ailments and not objectively established, I also give them little weight. With respect to her mental health limitations, I give his opinion little weight as he is not a mental health specialist, only saw her on two occasions, and the severity of these limitations is not corroborated by the medical record. Further, the claimant denied ever requiring psychiatric residential treatment which reduces the credibility of Dr. Swoboda's opinion that she was unable to function outside a highly supportive living arrangement.

(AR 301.)

The ALJ then discussed Dr. Krueger's 2008 consultative psychological evaluation and summarized his opinion. The ALJ gave "his opinion some weight but decline[d] to give more weight as he based his opinion on the combination of her mental and physical conditions. However, . . . her physical conditions were not that limiting and are addressed separately with the restriction to light work." (AR 302.) The ALJ continued that Dr. Krueger's opinion "is internally inconsistent as he found that she was capable of managing her own funds but would have moderate to severe impairments with respect to maintaining and persistence and moderate limitations with respect to understanding, remembering, and following simple work instructions." (*Id.*) The ALJ concluded that she gave "some weight" to Dr. Krueger's test results and therefore limited Ortega to simple work not to be performed at a production pace. (AR 303.)

13

In discussing Dr. Cherry's opinion, the ALJ gave it "great weight" because "it is consistent with the medical record" and because Dr. Cherry is "experienced at reviewing mental health records and assigning psychological work related restrictions." (*Id.*) The ALJ then turned to Dr. Cummings's opinion from the June 2009 mental status examination. The ALJ gave Dr. Cummings's opinion "moderate weight as [it is] consistent with his interview of the claimant and generally consistent with the opinion of Dr. Krueger." (*Id.*)

At phase two of step four, the ALJ found that Ortega has no past relevant work to which she might return. (AR 305.)

Based on the testimony of a vocational expert, the ALJ concluded, at step five, that Ortega could work as a garment folder, which is light work with special vocational preparation ("SVP") score of 2; a hand ironer, which is light work with an SVP of 2; and a housekeeper, which is light work with an SVP of 2, and was, therefore, not disabled during the relevant period. (AR 306.)

### DISCUSSION

Ortega argues that the ALJ erred by failing to follow and apply Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (Jan. 1, 1983)[3] and, alternatively, that she erred at step four by failing to include all of the limitations found by Drs. Swoboda and Krueger, and failed to adequately explain why she did not adopt these opinions.[4]

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[4] Ortega's counsel failed to disclose that he made an almost identical argument as to SSR 83-20 before Judge Vidmar and lost that argument, despite citing multiple cases from the District of New Mexico in which different judges accepted the same argument under SSR 83-20. I issued an Order to Show Cause on this point. (Doc. 26.) A separate order relating to the Order to Show Cause is being filed concurrently with this Opinion.

1. **Application of SSR 83-20**

Ortega devoted the majority of her motion to remand and her reply to the argument that the ALJ erred by applying the sequential evaluation process at all, when the ALJ should have limited her review to when—during the relevant time period—Ortega became disabled. (Doc. 18 at 11-16; Doc. 24 at 2-6.) Ortega argues that because her second application had been approved, she was already found to be disabled and, thus, the ALJ should have applied SSR 83-20 instead of the sequential evaluation process. I do not agree.

Though not cited by either party, Judge Vidmar squarely addressed this issue in a thorough and well-reasoned Memorandum Opinion and Order in *Jaramillo v. Colvin*, No. 14-cv-298 SMV (D.N.M. May 4, 2015) (ECF No. 25). *Jaramillo* is analogous to this case factually and procedurally: the claimant filed an application that was denied administratively and by the ALJ; while the initial application was pending before the Appeals Council, the claimant filed a subsequent application that was fully granted by a second ALJ; on remand, the ALJ applied the sequential evaluation process to determine whether the claimant was disabled, rather than accepting outright that the claimant was disabled during the period of the first application and jumping straight to a determination of the onset date of disability. Further, the claimant in *Jaramillo* made the exact same argument on appeal to Judge Vidmar, that SSR 83-20 applied and constrained the ALJ's task on remand. I find that *Jaramillo* is the most on point decision and have adopted Judge Vidmar's reasoning.

SSR 83-20 applies where a claimant has already been found disabled. It sets forth the process for determining the onset date of disability. A finding of disability is a predicate to utilization of SSR 83-20; there is no need to determine the onset date if the claimant is not

disabled. Here, Ortega argues that the approval of her second application triggers the utilization of SSR 83-20 with respect to her first application. (Doc. 18 at 12.) I do not agree.

Approval of a "subsequent claim does not invade the period previously adjudicated by the ALJ decision." HALLEX § I-5-3-17(III)(B)(2) (describing the procedures for the factual scenario present in this case).[5] "Any favorable determination on the subsequent claim made while the request for review of the hearing decision in the prior claim is pending will be limited to the period beginning on the date after the date of the ALJ's decision on the prior claim." HALLEX § I-5-3-17(I)(A). Therefore, the approval of Ortega's second application (dated July 13, 2010) is not determinative of the question of disability in her first application (dated July 15, 2008).

Ortega's reliance on *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), is misplaced. In *Blea*, there was only one application and one adjudication period at issue.[6] *Id.* at 906. The claimant had filed one application (for both disability insurance benefits ("DIB") and SSI) on March 9, 2002. *Id.* On reconsideration, after an initial denial, the State Agency found the claimant disabled as of March 1, 2002, and approved his claim for SSI. Because the claimant's

---

[5] HALLEX is the Commissioner's "Hearings, Appeals, and Litigation Law Manual," a set of internal guidelines for processing and adjudicating claims under the Social Security Act. *See* https://www.ssa.gov/OP_Home/hallex/hallex-I.html.

[6] Ortega also cites to *Trujillo v. Astrue*, No. 10-cv-885 JCH/KBM (D.N.M. June 20, 2011) (Report and Recommendations, ECF No. 22, adopted without objection on July 20, 2011, ECF No. 23), *Perez v. Colvin*, No. 14-cv-819 KBM (D.N.M. Dec. 10, 2015) (Memorandum Opinion and Order, ECF No. 25), and *Willingham v. Astrue*, No. 11-cv-508 LAM (D.N.M. Aug. 22, 2012) (Memorandum Opinion and Order, ECF No. 19), which held that SSR 83-20 controlled as to an initial application where the plaintiff was found disabled in a second application. None of these cases bind my decision. In *Trujillo*, the Court confronted a single application in which the claimant had been found disabled, and the debate was over the onset date of disability; there was no cause to determine whether the ALJ in the first application was bound by the decision in the second application. The *Willingham* decision did not expressly address the issue of whether the ALJ in the first application was bound by the decision in the second application. The *Perez* decision is most analogous to this case. However, the claimant in *Perez* was found to be disabled in her subsequent application because her condition met one of the Listings of Impairment, suggesting that her RFC would have rendered her disabled at some prior time. Additionally, the Court in *Perez* did not squarely address the issue noted for *Willingham* and *Trujillo*. I find that *Perez* is distinguishable.

date last insured for DIB was in 1998, his claim for DIB was denied. *Id.* The claimant appealed to an ALJ, and the ALJ applied the sequential evaluation process to find the claimant not disabled as of his date last insured—December 31, 1998. *Id.* The Tenth Circuit held that the ALJ erred in applying the sequential evaluation process. *Id.* at 911-12. The court explained that because the claimant had already been found disabled at the State-Agency level, the ALJ was required to apply SSR 83-20, which addresses determination of an onset date, rather than the sequential evaluation process, which addresses determination of disability itself. *See id.*

In contrast to *Blea*, where there was only one application and one adjudication period at issue, here, there are two applications and two adjudication periods at issue. In arguing that the ALJ was required to utilize SSR 83-20, rather than the sequential evaluation process, Ortega conflates her two applications and their respective but discrete adjudication periods. There has been no determination of disability as to Ortega's first application. The record indicates that the second application is based on evidence that is not relevant to the first application and is not part of the record on the first application. The ALJ on remand of the 2008 application was not bound by the outcome of the 2010 application, and was thus not required to apply SSR 83-20.

## 2. Medical Source Opinions

Ortega argues, generally, that the ALJ erred by impermissibly failing to include in the RFC all of the limitations found by Drs. Swoboda and Krueger. With respect to Dr. Swoboda, Ortega contends that the ALJ effectively rejected the opinion of a treating physician without performing the requisite two-step analysis mandated by the regulations by failing to provide adequate reasons for this rejection. With respect to Dr. Krueger, Ortega argues that the ALJ improperly analyzed his opinion by improperly limiting the weight accorded and by failing to explain the discrepancies between his opinion and the RFC.

When confronted with the opinion of a treating physician, an ALJ must complete a sequential two-step process for evaluating that opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Id.* A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374180, at *2 (July 2, 1996)). If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 404.1527(c) and must "give good reasons, tied to the factors specified . . ., for the weight assigned." *Id.* According an opinion little weight is tantamount to rejecting the opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" with "effectively rejecting" a medical-source opinion).

Here, there is no dispute that Dr. Swoboda was Ortega's treating physician. The ALJ found that Dr. Swoboda's opinion was not entitled to controlling weight because he only treated Ortega twice prior to July 12, 2010, his treatment notes did not document physical examination, he is not a mental health specialist, and he based his limitations on Ortega's reports. (AR 301.)

After determining that Dr. Swoboda's opinion was not entitled to controlling, the ALJ was required to applying the factors in 20 C.F.R. § 416.927(c) to determine how much weight to give the opinion. These factors include 1) the examining relationship; 2) the treatment relationship, including length, frequency, and nature of the relationship; 3) supportability of the

opinion with medical evidence; 4) consistency of the opinion with the record as a whole; 5) specialization of the physician; and 6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). While the Commissioner is correct that the ALJ is not required to discuss every factor in every case, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ is required to consider every factor.

Because the signatures on Ortega's records from Questa PMS are illegible, it is unclear whether Dr. Swoboda treated Ortega more than twice during the relevant time period. However, I am bound to accept the ALJ's determination that Dr. Swoboda saw Ortega twice during the relevant period. As to the physical limitations, the ALJ discounted Dr. Swoboda's opinion because he did not have medical imaging to confirm the diagnosis of degenerative joint disease and because he did not describe any physical examination of her knee. (AR 301.) The ALJ, however, ignored the fact that Dr. Reich conducted a physical examination and diagnosed Ortega with similar issues.

As to the mental limitations, the ALJ discounted Dr. Swoboda's opinion because he is not a mental health specialist. (*Id.*) This is true, but is not a reason to entirely discount his opinion given that he is a treating physician and, in fact, provided mental health diagnoses. (*See* AR 202, 203.) Further, Dr. Krueger found that Ortega was experiencing "significant functional impairment" and could be expected to have many of the same limitations as—or more severe limitations than—those assessed by Dr. Swoboda. (AR 166.) For example, Dr. Krueger and Dr. Swoboda both found that Ortega would have moderate limitations understanding and remembering simple work instructions (*compare* AR 166 *with* AR 271), and Dr. Krueger assessed severe limitations when dealing with complex or detailed instructions (AR 166), while Dr. Swoboda found that Ortega would have moderate limitations in this area (AR 271).

Nonetheless, the ALJ discounted Dr. Swoboda's opinion and gave some weight to Dr. Krueger's opinion.

I find that the ALJ's treatment of Dr. Swoboda's opinion is internally inconsistent with her evaluation of the other medical opinion evidence. Under the circumstances, I find that the ALJ committed reversible error by discounting the opinion of treating physician Dr. Swoboda without properly applying the two-step process in *Krauser*. Specifically, the ALJ failed to adequately apply and explain the factors found in 20 C.F.R. § 416.927(c) used to evaluate the weight given to the opinion.

### AWARD OF BENEFITS

This is an unusual case. Ortega's application has been pending since July of 2008—now well over eight years. District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quotation and citation omitted) (remanding for an immediate award of benefits where the application had been pending for more than five years). When the commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings[.]"). The

Commissioner "is not entitled to adjudicate a case *ad infinitum* until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

This case has been pending for over eight years. There have already been two administrative hearings and two decisions by ALJs. Ortega has satisfied, repeatedly, her burden to show her disability at the first four steps of the sequential evaluation process. The case was previously remanded to the Commissioner by this Court—and agreement of the parties—for further administrative proceedings in 2013. Despite the parties' agreement and the Appeals Council's clear instructions, and despite clear law on the evaluation of treating physician opinions, the Commissioner failed to apply the correct legal standards in evaluating the opinion of Dr. Swoboda. Additionally, several of the Commissioner's reasons for weighing the opinion were not supported by substantial evidence. Therefore, the Commissioner failed, for a second time, to meet her burden at step five to show that Ortega could perform other work.

This case concerns whether Ortega was disabled between July 15, 2008, and July 13, 2010. The administrative record is complete as to this time period. If Ortega were limited as Dr. Swoboda opined, she would not be able to work. The Commissioner has thus far been unable to adequately explain why such limitations should be rejected. Additionally, the record contains opinions from three consulting examiners—hired by the State Agency—that all agree that Ortega is more limited than the RFC suggests. Therefore, I find that there is no reasonable probability that Ortega will be denied benefits, and requiring further proceedings before the Commissioner would merely delay the award.

CONCLUSION

The Commissioner's final decision in this case is reversed, and the case is remanded for an immediate award of benefits. Although the ALJ correctly applied the sequential evaluation process rather than SSR 83-20, she still committed reversible error. The ALJ impermissibly rejected a treating physician's opinion without adequately explaining and supporting the reasons for so doing. Considering that the case has been pending for over eight years and that no useful purpose would be served in requiring further administrative proceedings, the case is remanded for an immediate award of benefits.

It is so ordered.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.