IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYNTHIA ORTEGA,

       Plaintiff,

v.                                                         CV 15-688 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**ORDER QUASHING ORDER TO SHOW CAUSE**

I issued an Order to Show Cause to claimant's counsel, Michael Armstrong, on November 2, 2016, based on my concern that counsel may have violated the New Mexico Rules of Professional Conduct, specifically Rule 16-303 (incorporated by D.N.M.LR-Civ. 83.9). (Doc. 26.) Specifically, I was concerned that Armstrong failed to disclose authority from the District of New Mexico that is directly adverse to his argument on Social Security Ruling ("SSR") 83-20. I held a hearing on this matter on November 8, 2016, at which Armstrong was represented by counsel. (Doc. 28.) As explained herein, I quash the Order to Show Cause and find that Armstrong did not violate the Rules of Professional Conduct, but remind him of the paramount importance of candor to the tribunal and his reputation with the Court.

Rule 16-303(A)(2) provides that a "lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

By way of brief background, Armstrong argued in this case that SSR 83-20 constrained the Administrative Law Judge's ("ALJ") role on remand to adjudicating the date of onset of disability for Cynthia Ortega, rather than applying the traditional five-step sequential evaluation process to determine whether Ortega was, in fact, disabled during the relevant time period. (*See* Doc. 18 at 11-16; Doc. 25 at 2-6.) In support of this argument, Armstrong cited three unpublished cases from the District of New Mexico—all cases that he argued—in which three members of the court found this argument persuasive: *Trujillo v. Astrue*, No. 10-cv-885 JCH/KBM, ECF No. 22 (D.N.M. June 20, 2011), and ECF No. 23 (July 20, 2011) (adopting the Magistrate Judge's proposed findings and recommended disposition); *Willingham v. Astrue*, No. 11-cv-508 LAM, ECF No. 19 (D.N.M. Aug. 22, 2012); and *Perez v. Colvin*, No. 14-cv-819 KBM, ECF No. 25 (D.N.M. Dec. 10, 2015). The Commissioner, in response to Armstrong's motion to remand, noted that District Court cases are not binding authority. In reply, Armstrong stated that "[t]he Commissioner's attempt to malign District precedent is . . . unpersuasive." (Doc. 24 at 5.)

Nowhere in the briefing did either party mention *Jaramillo v. Colvin*, No. 14-cv-298 SMV, in which Armstrong made substantially the same argument to Judge Vidmar. In the Memorandum Opinion and Order issued on May 4, 2015 (ECF No. 25), Judge Vidmar rejected Armstrong's argument on SSR 83-20, distinguished *Trujillo* and *Willingham*, and ultimately remanded the case for an immediate award of benefits. This last point—the immediate award of benefits—makes the *Jaramillo* decision exceedingly rare and memorable. In fact, Armstrong admitted during the hearing on this matter that in forty years of practice in social security law, he could count on one hand the number of cases that were remanded for immediate benefits. (*See* Doc. 28 at 2.)

In the motion to remand in this case, Armstrong provided the following argument as to the applicability of SSR 83-20:

> Because there had already been a finding of disability as of 2010 by ALJ Burke, the sole issue before ALJ Farris was to determine when Ms. Ortega's impairments were at a disabling level of severity in accordance with Social Security Ruling 83-20 ("SSR 83-20"). See Exhibit 1 (letter from the undersigned alerting ALJ Farris to the applicability of SSR 83-20).
>
> SSR 83-20 contains guidelines for determining a claimant's onset date of disability. SSR 83-20 provides a procedure to find a date of onset in instances where the disabling impairment is of non-traumatic origin or when the onset of disabling impairments needs to be inferred. The ruling defines the onset date of disability as, "the first day an individual is disabled as defined in the Act and the regulations." Id. In determining the onset date of disability for disabilities of non-traumatic origin, SSR 83-20 requires that an ALJ consider the claimant's "allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20 at *2. The ruling recognizes that it is sometimes necessary to infer an onset date, in which case it provides that the ALJ should consult a medical advisor at the administrative hearing. Id. at *3.

(Doc. 18 at 12.)

In the motion to remand in *Jaramillo*, Armstrong provided the following argument as to the applicability of SSR 83-20:

> Because there had already been a finding of disability, the sole issue before ALJ Rice was to determine the onset date for Ms. Jaramillo's disability between May 19, 2008 and May 17, 2010 in accordance with Social Security Ruling 83-20 ("SSR 83-20").
>
> SSR 83-20 contains guidelines for determining a claimant's onset date of disability. SSR 83-20 provides a procedure to find a date of onset in instances where the disabling impairment is of non-traumatic origin or when the onset of disabling impairments needs to be inferred. The ruling defines the onset date of disability as, "the first day an individual is disabled as defined in the Act and the regulations." Id. In determining the onset date of disability for disabilities of non-traumatic origin, SSR 83-20 requires that an ALJ consider the claimant's "allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20 at *2. The ruling recognizes that it is sometimes necessary to infer an onset date, in which case it
> 10 provides that the ALJ should consult a medical advisor at the administrative hearing. Id. at *3.

*Jaramillo*, No. 14-cv-298, Motion to Remand, ECF. No. 17 at 9-10 (D.N.M. Nov. 7, 2014).

With the exception of the name of the ALJ, the relevant dates, and the attachment of Exhibit 1 in *Ortega*, these passages are identical.

When Armstrong addressed the meaning of SSR 83-20 in the instant case, he wrote:

3

> According to **SSR 83-20**, determination of the onset date for disabilities of non-traumatic origin, "involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20. Where, as here, the case involves a slowly progressive impairment, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." Id. Thus, the onset date must be inferred "from the medical and other evidence that describe the history and symptomatology of the disease process." Id. Moreover, **when an onset date must be inferred the ALJ must call upon the services of a medical advisor**. Id.; Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006).

(Doc. 18 at 12-13 (emphasis in original).)

> When addressing the same issue in *Jaramillo*, Armstrong wrote:

> According to **SSR 83-20**, determination of the onset date for disabilities of nontraumatic origin, "involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20. Where, as here, the case involves a slowly progressive impairment, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." Id. Thus, the onset date must be inferred "from the medical and other evidence that describe the history and symptomatology of the disease process." Id. Moreover, when an onset date must be inferred the ALJ must call upon the services of a medical advisor. Id.; Blea at 911.

*Jaramillo*, No. 14-cv-298 SMV, Motion to Remand, ECF No. 17 at 11-12 (emphasis in original).

> Again, the passages are substantially identical.

> In discussing the ALJ's treatment of SSR 83-20 in this case, Armstrong wrote:

> However, ALJ Farris failed to follow the controlling SSR 83-20. She erroneously proceeded to apply the five-step sequential evaluation process, rather than determine the onset date of his disability. The issue of whether SSR 83-20 applies and a medical advisor is necessary **does not turn on** whether the ALJ could reasonably have determined that Ms. Ortega was not disabled between March 2008 and December 2009.

> This Court held in **<u>Trujillo v. Astrue</u>**, CIV 10-0885 JCH/KBM (DNM 2011):

>> Ms. Trujillo contends that in this case, where it has already been determined that Ms. Trujillo is "disabled" within the meaning of the

4

> Social Security Act and where the only question is what his onset date of disability is, **SSR 83-20** rather than SSR 96-4p applies.
>
> Social Security Ruling 96-4p pertains to the evaluation of symptoms in initially determining whether an individual is disabled pursuant to the Social Security Act. *See* SSR 96-4p, 1996 WL 374187 at *1 (July 2, 1996). **Where an individual, such as Ms. Trujillo has already been determined to be disabled and the only question is the date of onset, SSR 83-20 controls the analysis**. (emphasis added)

The Tenth Circuit also addressed this issue in <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), by stating:

> The Commissioner replies that the ALJ was not obligated to consult with a medical advisor because there was substantial evidence to conclude, at step five of the five-step sequential analysis, that Ms. Blea retained the capacity to perform sedentary work.
>
> We begin by rejecting the Commissioner's position because it fails to address the crux of the issue. **The ALJ's finding of residual functional capacity at step five does not mean that the ALJ can ignore the clear directives of SSR 83-20, which is "binding on all components of the Social Security Administration."** 20 C.F.R. § 402.35(b)(1). <u>Blea</u> at 911.

(Doc. 18 at 14-15 (emphasis in original).)

When Armstrong discussed the ALJ's treatment of SSR 83-20 in *Jaramillo*, he wrote the following:

> However, in her decision ALJ Rice failed to follow the controlling **SSR 83-20** and erroneously proceeded to apply the five-step sequential evaluation process (SEP) that has been established for evaluating whether a client is disabled, rather than determine the onset date of her disability. The issue of whether SSR 83-20 applies and a medical advisor is necessary does not turn on whether the ALJ could reasonably have determined that Ms. Jaramillo was not disabled between May 19, 2008 and May 17, 2010. This Court held in **Trujillo v. Astrue**, CIV 10-0885 JCH/KBM (DNM 2011):
>
> > Mr. Trujillo contends that in this case, where it has already been determined that Mr. Trujillo is "disabled" within the meaning of the Social Security Act and where the only question is what his onset date of disability is, **SSR 83-20** rather than SSR 96-4p applies.

> Social Security Report 96-4p pertains to the evaluation of symptoms in initially determining whether an individual is disabled pursuant to the Social Security Act. *See* SSR 96-4p, 1996 WL 374187 at *1 (July 2, 1996). **Where an individual, such as Mr. Trujillo has already been determined to be disabled and the only question is the date of onset, SSR 83-20 controls the analysis**. (emphasis added)

The Tenth Circuit also addressed this issue in Blea v. Barnhart, 466 F.3d 903, 909 (10th Cir. 2006) by stating:

> The Commissioner replies that the ALJ was not obligated to consult with a medical advisor because there was substantial evidence to conclude, at step five of the five-step sequential analysis, that Mr. Blea retained the capacity to perform sedentary work.
>
> We begin by rejecting the Commissioner's position because it fails to address the crux of the issue. The ALJ's finding of residual functional capacity at step five does not mean that the ALJ can ignore the clear directives of SSR 83-20, which is "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). Blea at 911[.]

*Jaramillo*, No. 14-cv-298 SMV, Motion to Remand, ECF No. 17 at 10-11 (emphasis in original) (footnote omitted).

Again, these passages are shockingly similar. Indeed, even the added emphasis in the briefs is identical.

The standard for a Rule 16-303 violation is for a lawyer to knowingly fail to disclose authority. Under the Rules of Professional Conduct, "knowingly" "denotes actual knowledge of the fact in question[; a] person's knowledge may be inferred from circumstances." NMRA 16-100(F).

Armstrong did not contend that Rule 16-303 does not apply, but rather that he forgot about or did not think about the *Jaramillo* case when drafting the brief in this case. At the hearing, Armstrong—personally and through counsel—iterated and reiterated that he did not intend to mislead the Court, but merely forgot about the case. (*See* Doc. 28 at 2.) Armstrong

explained that he may have too many cases or been too busy, but he simply forgot about *Jaramillo*. (*Id.*)

Given that such substantial portions of the motions to remand are nearly identical, it strains credulity to believe that Armstrong drafted the motion to remand in this case from scratch; rather, it appears that Armstrong cut-and-paste from the brief in *Jaramillo* and engaged in light editing for this portion of the *Ortega* brief.

Rule 16-303(A)(2) speaks to a lawyer's knowing failure to disclose authority. Under the New Mexico Rules of Professional Conduct, "'[k]nowingly' . . . denoted actual knowledge of the fact in question," but a lawyer's "knowledge may be inferred from circumstances." N.M.R.A. 16-100(F).

While the circumstances here are compelling, I note that Armstrong has practiced before me and before the District of New Mexico for many years without running into ethical problems or displaying a lack of candor to the tribunal. For this reason alone, and despite the overwhelming similarities and the memorable nature of the *Jaramillo* decision, I take him at his word that the omission was not intentional, was not meant to mislead the Court, and will not happen again. Based on Armstrong's representation at the hearing, I find that he did not knowingly fail to disclose the *Jaramillo* decision and therefore did not violate Rule 16-303(A)(2).

Because I am giving Armstrong the benefit of the doubt in this instance, I quash the Order to Show Cause. I caution Armstrong that future pleadings will be thoroughly scrutinized and remind him that his reputation and credibility with the Court is paramount.

It is so ordered.

                                             */s/ William P. Lynch*
                                             William P. Lynch
                                             United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.